# United States Court of Appeals for the Federal Circuit

---

**BACKERTOP LICENSING LLC,**
*Plaintiff-Appellant*

**LORI LAPRAY,**
*Movant-Appellant*

v.

**CANARY CONNECT, INC.,**
*Defendant*

------------------------------------------------

**BACKERTOP LICENSING LLC,**
*Plaintiff-Appellant*

**LORI LAPRAY,**
*Movant-Appellant*

v.

**AUGUST HOME, INC.,**
*Defendant*

---

2023-2367, 2023-2368, 2024-1016, 2024-1017

---

Appeals from the United States District Court for the District of Delaware in Nos. 1:22-cv-00572-CFC, 1:22-cv-00573-CFC, Chief Judge Colm F. Connolly.

---

Decided: July 16, 2024

---

DAVID L. FINGER, Finger & Slanina LLC, Wilmington, DE, argued for plaintiff-appellant and movant-appellant.

W. DAVID MAXWELL, Hogan Lovells US LLP, Washington, DC, argued for amicus curiae W. David Maxwell. Also represented by PAGET CAROLINE BARRANCO, ABBY WALTER GRAY.

---

Before PROST, HUGHES, and STOLL, *Circuit Judges*.

HUGHES, *Circuit Judge*.

Backertop Licensing LLC and Lori LaPray appeal the U.S. District Court of Delaware's sua sponte order requiring Ms. LaPray to appear in-person before the District Court for testimony regarding potential fraud on the court, as well as the District Court's order of monetary sanctions against Ms. LaPray for subsequently failing to appear. Because these orders were within the District Court's inherent authority and were not abuses of discretion, we affirm the District Court.

I

A

Over the past year and a half, the Chief Judge of the District of Delaware has identified potential attorney and party misconduct in dozens of related patent cases. *See, e.g.*, *Nimitz Techs. LLC v. CNET Media, Inc.*, No. 21-1247, 2022 WL 17338396, at *10–12 (D. Del. Nov. 30, 2020); *Backertop Licensing LLC v. Canary Connect, Inc.*, No. 22-572 (D. Del. Apr. 28, 2022); *Backertop Licensing LLC v. August Home, Inc.*, No. 22-573 (D. Del. Apr. 28, 2022). The plaintiffs in these cases are limited liability companies (plaintiff LLCs) that seem to be associated with IP Edge, a patent monetization firm, and Mavexar, an affiliated consulting shop. *See, e.g.*, *Nimitz*, 2022 WL 17338396, at *10–

12. In the District Court's detailed memorandum, it found that IP Edge and Mavexar appear to have created all of the plaintiff LLCs; recruited outside individuals to serve as their sole owners; assigned patents to the plaintiff LLCs for little or no consideration; retained the rights to the majority of royalties and settlement proceeds; and reported a complete assignment to the United States Patent and Trademark Office (PTO)—all without disclosing IP Edge's ongoing rights in any patent-related proceedings. *See id.* at *16–25. The District Court found that IP Edge and Mavexar then directed infringement litigation asserting those patents—including overseeing the attorneys and agreeing to settlements—with seemingly little to no input from the plaintiff LLCs' owners. *Id.* at *18–25.

The District Court developed concerns that this arrangement may conceal from the court the real parties in interest: IP Edge and Mavexar. *Id.* at *26; *see also* Fed. R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest."). The District Court was also concerned whether "those real parties in interest perpetrated a fraud on the court by fraudulently conveying to a shell LLC [the patents] and filing a fictitious patent assignment with the PTO designed to shield those parties from potential liability they would otherwise face in asserting [the patents] in litigation." *Nimitz*, 2022 WL 17338396, at *26. Further, the District Court noted that the plaintiff LLCs and their counsel may have violated local disclosure rules by failing to disclose IP Edge's or Mavexar's funding for the litigation. *Id.* Finally, the District Court explained that plaintiff LLCs' attorneys may have violated the Rules of Professional Conduct by filing, settling, and dismissing litigation at the direction of Mavexar, a non-legal consulting firm, without the informed consent of the plaintiff LLCs' owners. *Id.* at *13–18.

In November 2022, the District Court held evidentiary hearings to gather more information about its concerns regarding the conduct of the parties. J.A. 1–2. After the hearings, the District Court ordered the plaintiff LLCs and

their counsel to provide documents that indicated that patents had been transferred to shell LLCs. *Id.* One of the plaintiff LLCs challenged these inquiries in a petition for mandamus to this court. *In re Nimitz Techs. LLC*, No. 23-103, 2022 WL 17494845, at *1 (Fed. Cir. Dec. 8, 2022). We denied the petition, confirming that the District Court has inherent authority to seek information related to the conduct of the parties. *Id.* at *2–3 (the District Court's concerns "[a]ll are related to potential legal issues in the case, subject to the 'principle of party presentation' . . . or to aspects of proper practice before the court, over which district courts have a range of authority preserved by the Federal Rules of Civil Procedure" (citing Fed. R. Civ. P. 83(b); *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991))).

B

The cases involving Backertop Licensing LLC (Backertop), and the orders that are the subject of this appeal, are part of the District Court's inquiry. Ms. LaPray is the sole owner of Backertop. In 2022, Backertop filed at least twelve patent infringement cases in federal district courts in California, Colorado, New York, Texas, and Delaware. *See* J.A. 14, 21 (collecting cases). Ms. LaPray is also the managing member of six other LLCs that have filed at least ninety-seven patent infringement cases in federal district courts. *See* J.A. 17–20 (collecting cases as of July 2023). In the Backertop cases, the District Court identified the same pattern of potential misconduct seen in the other IP Edge-linked and Mavexar-linked cases.

In March 2023, after this court denied the mandamus petition challenging the production orders in *In re Nimitz*, the District Court ordered Backertop, Ms. LaPray, and their attorneys to produce documents and communications relating to the District Court's concerns regarding fraud on the court. *See* J.A. 125–29; *see also* J.A. 3 (explaining that the District Court refrained from issuing the document production order in *Backertop* while the *In re Nimitz* mandamus petition was pending). The District Court also ordered

Ms. LaPray to submit a declaration identifying "any and all assets owned by Backertop." J.A. 129.

In response, on April 3, 2023, Backertop moved to set aside the document production order, arguing that it was overly broad, sought privileged information, and exceeded the District Court's jurisdiction. *See* J.A. 4–5. Several weeks later, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), Backertop filed a joint stipulation of dismissal. J.A. 130. Four days later, Backertop's local counsel, Jimmy Chong, filed a motion to withdraw as counsel, explaining that he "[was] unable to effectively communicate with [Backertop] in a manner consistent with good attorney-client relations." J.A. 6. Backertop opposed his motion to withdraw. *Id.* The same day, Backertop's other attorney, Ronald Burns, emailed the District Court seeking to withdraw as counsel. *Id.* Mr. Burns sent an email to the court, instead of filing on the docket, "due to the fact that [he could not] get a response from [his] local counsel," Mr. Chong. *Id.* Mr. Burns explained that he had "started a new job" and "[could not] represent the plaintiff any longer." *Id.*

On May 1, 2023, the District Court set a hearing for June 8, 2023, "[t]o sort through [the] morass." *Id.* Given Backertop's opposition to its attorney's motion to withdraw, and the apparent conflict between Mr. Chong and Mr. Burns, the District Court ordered Ms. LaPray, Mr. Chong, and Mr. Burns to attend the hearing in person. *Id.* The District Court also denied Backertop's motion to set aside the production order, citing Supreme Court and Third Circuit precedent confirming that voluntary dismissal under Rule 41(a)(1) does not deprive the District Court of jurisdiction to exercise its inherent powers. J.A. 4–5 ("It makes no sense that a party could deprive a court of its inherent powers simply by filing a notice (or stipulation) of dismissal. To hold otherwise would render district courts impotent to manage their cases in an orderly fashion and would foster abuse of our judicial system by unethical litigants and their attorneys." (footnote and citation omitted)).

On May 9, 2023, Backertop produced allegedly responsive documents to the District Court. *See* J.A. 132–33. Yet, as the District Court later observed, several of the documents had clearly missing attachments or cover letters. J.A. 190, 268. Moreover, the content of the ownership documents produced raised further questions relating to the District Court's concerns about potential attorney and party misconduct. *See, e.g.*, J.A. 268 (Chief Judge Connolly questioning whether Ms. LaPray did, "in fact, sign the documents or authorize the signature of the documents contemporaneously with the date of the documents"); J.A. 216, 247 (discussing documents indicating that Mavexar retained attorneys to assert a patent portfolio even before Backertop was created, which suggest that Mavexar is the principal behind the litigation). The District Court notified the parties that it had "questions for Ms. LaPray about the production[, which] require her physical presence in court" to "assess her credibility." J.A. 10. The District Court also reiterated that it needed Ms. LaPray's testimony to sort through the attorneys' motions to withdraw, which it found "unusual to say the least." *Id.*

Despite her previous attendance at a hearing in Delaware on November 10, 2022, Ms. LaPray notified the District Court that she was unable to attend the June 8, 2023, hearing in-person as ordered. Amicus Br. 12[1]; J.A. 134–41. Ms. LaPray stated that she had preexisting travel scheduled from June 8 to June 15, 2023. J.A. 138. She also stated that she is a paralegal and had "a number of trials and hearing[s] through the entire summer," although she did not specify dates, and that parental obligations continue to make travel difficult. *Id.* Ms. LaPray stated that she could

---

[1] Because Canary Connect, Inc. and August Home, Inc., the original defendants, chose not to participate in litigation after their joint stipulated dismissal with Backertop, our court requested amicus curiae briefing from W. David Maxwell of Hogan Lovells US LLP to represent the Delaware District Court's position on this matter.

not travel to Delaware "in the foreseeable future" and requested permission to appear telephonically. *Id.*

To accommodate Ms. LaPray's specific conflict from June 8 to June 15, 2023, the District Court set a new hearing for July 20, 2023. J.A. 10. The District Court advised the parties that if a hearing on that date "presents exceptional difficulties for Ms. LaPray," she may submit "affidavits and supporting documentation demonstrating exactly why that is the case and propose a range of alternative dates." *Id.* The District Court denied Ms. LaPray's request to appear telephonically because "[c]redibility assessments are difficult to make over the phone." *Id.* Further, the District Court stated that remote hearings are "the exception, not the rule." *Id.* The District Court sent a copy of its decision to Ms. LaPray's employer because Backertop's attorneys had indicated in their motions to withdraw that they were not in contact with Ms. LaPray. *See* J.A. 17, 279–80. Ms. LaPray and Backertop moved for reconsideration. *See* J.A. 140–72. They again asserted that Ms. LaPray's daily family obligations would make travel to Delaware for a hearing difficult and requested a videoconference hearing. *See* J.A. 141.

In denying the motion, the District Court noted that it was "sympathetic to the childcare burdens that business- and court-related travel can impose on working parents," but observed that Ms. LaPray had voluntarily agreed "to serve as the sole natural person affiliated with Backertop" and to file "the dozen patent infringements suits . . . last year in district courts across the country, including four suits in Delaware." J.A. 15. The District Court also denied the request to participate by videoconference, explaining that "[l]ive, in-person testimony remains the best means of ascertaining the truth." J.A. 14.

For the first time, Backertop also argued in its motion for reconsideration that Federal Rule of Civil Procedure 45's geographic limit precludes the District Court's order requiring Ms. LaPray to appear in Delaware. *See* J.A. 12–13. After first noting that the argument had been forfeited

for failure to raise it earlier, the District Court rejected the argument on the merits. *Id.* The District Court stated that its order to appear was based on its inherent powers, not FRCP 45. J.A. 13. And it further stated that FRCP 45 "has no bearing on the circumstances at hand," because it only imposes geographic limits on subpoenas issued by an attorney or the clerk at a party's request. *Id.* The District Court therefore concluded that FRCP 45 did not restrict its inherent power to sua sponte order Ms. LaPray to appear. J.A. 13–14.

After Ms. LaPray refused to attend the July 20, 2023, hearing, the District Court held a show cause hearing on August 1, 2023, to provide Ms. LaPray with an opportunity to show why she should not be held in civil contempt. *See* J.A. 24. Ms. LaPray did not appear at that hearing. *Id.* Her attorney noted that Ms. LaPray would stand on her arguments made in her motion to dismiss the contempt proceeding, *id.*, including the FRCP 45 argument, *see Backertop Licensing LLC v. Canary Connect, Inc.*, No. 22- 572, ECF No. 54 at 9–10 (D. Del. July 28, 2023).

In another detailed memorandum, the District Court rejected Ms. LaPray's arguments. *See* J.A. 24–30. The District Court found Ms. LaPray in civil contempt of court and imposed a fine of $200 per day until Ms. LaPray appeared in-person in court. J.A. 30. Backertop and Ms. LaPray appealed the District Court's orders, and—as the original opposing parties were dismissed from the case—our court appointed amicus curiae counsel to represent the District Court's position. *See* Amicus Br. 1.

II

Because this appeal involves "procedural matters that are not unique to patent issues," we apply the law of the regional circuit court—here, the Third Circuit. *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1325–26 (Fed. Cir. 2006). The District Court's exercise of its inherent power is reviewed for abuse of discretion. *See Chambers*, 501 U.S. at 55 ("We review a court's

imposition of sanctions under its inherent power for abuse of discretion."); *United States v. Wright*, 913 F.3d 364, 369 (3d Cir. 2019) (reviewing dismissal of an indictment "based on the Court's inherent power for abuse of discretion"). Whether the District Court possesses a particular inherent power, however, is a question of law reviewed de novo. *Holland v. New Jersey Dep't of Corrs.*, 246 F.3d 267, 281 (3d Cir. 2001).

Contempt orders are reviewed for abuse of discretion. *United States v. Sarbello*, 985 F.2d 716, 727 (3d Cir. 1993). An abuse of discretion requires either "an error of law or a clearly erroneous judgment or finding of fact." *Id.* Contempt findings must be based on clear and convincing evidence. *Id.*

As the Third Circuit has explained, "when an order is appealable, and one foregoes the appeal, he may not raise the validity of the order at a subsequent contempt trial." *United States v. Pearce*, 792 F.2d 397, 400 (3d Cir. 1986); *see also Maggio v. Zeitz*, 333 U.S. 56, 68 (1948) ("[W]hen completed and terminated in a final order, [the order] becomes res judicata and not subject to collateral attack in the contempt proceedings."). In contrast, when the underlying order is interlocutory and non-appealable, there is no concern with giving litigants a second bite at the apple. The order's validity may therefore be raised during contempt proceedings. *Pearce*, 792 F.2d at 400.

Here, the District Court's order to appear was interlocutory and non-appealable. *See Micro Motion Inc. v. Exac Corp.*, 876 F.2d 1574, 1576 (Fed. Cir. 1989) (citing *Alexander v. United States*, 201 U.S. 117, 121–22 (1906) ("The nonappealability of orders requiring the production of evidence from witnesses has long been established.")); *see also id.* at 1577 (collecting cases from other circuits).

Because civil contempt orders are interlocutory, parties may not appeal civil contempt orders "except incident to an appeal from a judgment otherwise appealable." *Halderman v. Pennhurst State Sch. & Hosp.*, 673 F.2d 628, 636

Case 1:22-cv-00573-CFC   Document 68-1   Filed 08/22/24   Page 10 of 15 PageID #: 1114

10          BACKERTOP LICENSING LLC v. CANARY CONNECT, INC.

(3d Cir. 1982); *see also Constr. Drilling, Inc. v. Chusid*, 90 F. App'x 630, 632 (3d Cir. 2004). For non-parties, however, the rule is different: "[N]on-party witnesses who are held in contempt may immediately appeal the contempt order." *Wallace v. Kmart Corp.*, 687 F.3d 86, 89 (3d Cir. 2012); *see also Alexander*, 201 U.S. at 121 (1906) ("Let the court go farther, and punish the witness for contempt of its order—then arrives a right of review.") (cleaned up); *In re Flat Glass Antitrust Litig.*, 288 F.3d 83, 87 (3d Cir. 2002) ("An adjudication of contempt . . . provides the finality necessary to initiate an appeal.").

Here, Ms. LaPray—as an officer of Backertop—is best characterized as a non-party for purposes of appealability. The Third Circuit has indicated that an officer of a party is generally considered a non-party. *See E. Maico Distribs., Inc. v. Maico-Fahrzeugfabrik, G.m.b.H*, 658 F.2d 944, 949 (3d Cir. 1981) ("In civil contempt proceedings or Rule 37(b) sanctions against a non-party, even against an attorney to or an officer of a party, an appeal generally need not wait until final judgment in the case as a whole."). The Ninth Circuit agrees. *See, e.g., David v. Hooker, Ltd.*, 560 F.2d 412, 417 (9th Cir. 1977) ("[T]his court . . . rejected the contention that, in determining the finality of judgments for appeal, officers of corporate defendants must be considered as parties."). The civil contempt order against Ms. LaPray gives her as much of a "distinct and severable interest"—facing personal fines—as any other non-party witness permitted to appeal. *United States v. Sciarra*, 851 F.2d 621, 628 (3d Cir. 1988).

Therefore, we may review the District Court's order to appear in the context of Ms. LaPray's appeal from the District Court's contempt order.[2]

---

[2] Although the District Court found that Backertop forfeited its FRCP 45 argument, it nonetheless addressed the argument on the merits. J.A. 12–13. We decline to find

III

A

We hold that the District Court's order requiring Ms. LaPray to appear at an in-person hearing falls squarely within its inherent powers. Contrary to Appellants' arguments, the District Court's order did not conflict with FRCP 45, because that Rule does not limit the geographical range of a court's ability to sua sponte issue an order to appear.

On its face, FRCP 45 only applies to a party or attorney's efforts to subpoena a person required to attend a trial, hearing, or deposition within a 100-mile radius. It states:

(a) IN GENERAL[ . . . ]

> (3) *Issued by Whom.* The clerk must issue a subpoena, signed but otherwise in blank, to a party who requests it. That party must complete it before service. An attorney also may issue and sign a subpoena if the attorney is authorized to practice in the issuing court. [ . . . ]

Fed. R. Civ. P. 45(a)(3). Elsewhere, FRCP 45 confirms that "[a] party or attorney" is "responsible for issuing and serving a subpoena" under the Rule. Fed. R. Civ. P. 45(d)(1). It is therefore up to "[a] party or attorney" to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *Id.* Nowhere does FRCP 45 mention the court's own orders to appear, issued without a

---

forfeiture and instead exercise our discretion to rule on the merits. *See In re Imerys Talc Am., Inc.*, 38 F.4th 361, 373 (3d Cir. 2022) ("[T]he waiver rule is one of discretion rather than jurisdiction, and we may overlook waiver where, as here, the public interest is better served by addressing [an argument] than by ignoring it.") (internal punctuation and citations omitted).

request from a party or attorney. Given this silence, the District Court's sua sponte order compelling Ms. LaPray to appear is not "contrary to any express grant of or limitation on the district court's power contained in a rule or statute." *Dietz v. Bouldin*, 579 U.S. 40, 45–46 (2016).

Indeed, many of FRCP 45's requirements would be illogical if applied to a court's own orders. For instance, a court would be required to "impose an appropriate sanction" on itself should the court fail to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). FRCP 45(a)(2) also requires that the subpoena "must issue from the court where the action is pending"—a self-evident requirement, if applied to a court's own order to compel appearance. And while federal agencies are explicitly exempt from the FRCP 45 requirement to "tender[] the fees for 1 day's attendance and the mileage allowed by law" when serving a subpoena, federal courts would be required to pay those fees. Fed. R. Civ. P. 45(b)(1). Reading FRCP 45 as a whole, we conclude that none of these requirements apply to a court's own order compelling a witness to appear. As a result, neither do the geographic limitations in FRCP 45(c)(1), contrary to Appellants' arguments. We hold that FRCP 45 governs party- and attorney-initiated subpoenas only.

The absence of an express limit on sua sponte court orders in FRCP 45 alone is dispositive. *See Dietz*, 579 U.S. at 45–46. The distinction between party-initiated subpoenas and sua sponte court orders is also consistent with the historical context of FRCP 45. Since its inception, FRCP 45—which has always included a geographic limit—has expressly applied to subpoenas that parties requested and served without initial court oversight. *See* Rule of Civil Procedure for the District Courts of the United States 45(a), 1934 Edition U.S.C. Supplement 5 874 (1939) ("The clerk shall issue a subpoena . . . signed and sealed but otherwise in blank, to a party requesting it, who shall fill it in before service."), 45(e)(1) ("A subpoena requiring the attendance

of a witness . . . may be served at any place within the district, or at any place without the district that is within 100 miles . . . .").

In 1991, FRCP 45 was amended to allow attorneys themselves to issue a subpoena, again without initial court oversight. *See* Notes of Advisory Comm. On Rules—1991 Amendment. Without upfront court supervision, and given the high volume of subpoena practice in federal courts, it makes sense that the Rules would impose bright-line rules on the scope of party- and attorney-initiated subpoenas— as well as specific mechanisms to hold parties and attorneys accountable. *See id.* ("[A]ccompanying the evolution of this power of the lawyer as officer of the court is the development of increased responsibility and liability for the misuse of this power."); *see also* Fed. R. Civ. P. 45(d)(1) (party or attorney must "take reasonable steps to avoid imposing undue burden or expense" on subpoena recipients and face sanctions if they fail to do so). These guardrails are intended to protect non-parties before they have to incur the time and expense of appearing to challenge a party- or attorney-initiated subpoena in court.

A court's sua sponte order to appear does not raise the same concerns as a subpoena initiated by the parties. Such orders necessarily involve court oversight at the outset. The court itself will know who is receiving the subpoena and will have weighed the need for the testimony against the potential burden on that person. It therefore is understandable that FRCP 45 only expressly addresses attorney- and party-initiated subpoenas, leaving district courts with discretion to manage their own orders to appear.

B

Turning to the District Court's contempt order, Appellants focus on an alleged conflict between the District Court's order to appear and FRCP 45. Backertop and Ms. LaPray do not argue that the District Court's order to appear was otherwise unreasonable or an abuse of discretion. Nor could they. The District Court's order was a

"'reasonable response to the problems and needs' confronting the court's fair administration of justice." *Dietz*, 579 U.S. at 45 (quoting *Degen v. United States*, 517 U.S. 820, 823–24 (1996)).

The District Court's order to compel Ms. LaPray's attendance was an appropriate means to investigate potential misconduct involving Backertop, a corporate party of which she is the sole representative. More specifically, the District Court's stated concerns include that Backertop may have concealed certain third-party funding and the real parties in interest, that those real parties in interest may have perpetrated a fraud on the court, and that Backertop's counsel may have failed to comply with the Rules of Professional Conduct. *See* J.A. 16. Backertop's counsel's motions to withdraw and Backertop's insufficient document production only compounded the District Court's concerns. *See* J.A. 10.

In light of this, compelling Ms. LaPray's attendance was not an abuse of discretion of the District Court's inherent authority. The District Court stated that Ms. LaPray's attendance in person was required to assess her credibility given (1) "the representations and positions of counsel and Ms. LaPray" and their apparent lack of communication, especially in light of counsels' motion to withdraw; and (2) the District Court's "questions for Ms. LaPray about [Backertop's document] production." J.A. 10. As the Third Circuit recognizes, it is particularly important to observe witnesses in person when making credibility determinations. *See Dia v. Ashcroft*, 353 F.3d 228, 252 n.23 (3d Cir. 2003). While another district court may have found that a telephonic or videoconference hearing was sufficient, it was reasonable for the District Court here to require in-person testimony in furtherance of its authority to investigate attorney and party misconduct.

Moreover, the District Court had already rescheduled the hearing once to accommodate Ms. LaPray's preexisting travel and expressed willingness to accommodate similar specific conflicts, with proposed alternative dates. J.A. 10.

Ms. LaPray never identified other specific conflicts, other than continuing childcare obligations making travel at any time difficult, nor did she propose alternative dates. Instead, she chose to move for reconsideration. *See* J.A. 140–72. Under these circumstances, it was not an abuse of discretion to compel Ms. LaPray's attendance at the July 20, 2023, hearing and hold her in civil contempt of the court when she did not appear.

## IV

We have considered Appellants' remaining arguments and find them unpersuasive. Because the District Court was within its inherent authority to order Ms. LaPray to appear before it to investigate fraud on the court, and the order imposing monetary sanctions when she did not appear was not an abuse of discretion, we affirm.

**AFFIRMED**